UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

BENJAMIN JAMES MACHUL,

    Plaintiff,

vs.

STATE OF FLORIDA, *et al.*,

    Defendants.

Case No. 3:20-cv-78

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**ORDER AND ENTRY GRANTING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO OBJECT TO THE COURT'S AT REPORT AND RECOMMENDATION**

\*\*\*

**SUPPLEMENTAL REPORT AND RECOMMENDATION[1] THAT: (1) PLAINTIFF'S MOTION TO CONFIRM AN ARBITRATION AWARD (DOC. 1-4) BE DENIED; AND (2) THIS CASE BE TERMINATED ON THE COURT'S DOCKET**

---

This is a *pro se* civil case filed by Plaintiff Benjamin James Machul that arises from, *inter alia*, a stop, an arrest, the towing of Plaintiff's vehicle, and criminal proceedings against Plaintiff in the Twelfth Judicial Circuit Court for Manatee County, Florida (hereinafter "the Florida state court") that ended in his conviction. *See* doc. 1-1.

The underlying events occurred on April 20, 2018 when a school crossing guard named Linda Byrd approached Palmetto, Florida police officer Lux (first name unknown) to report a suspicious vehicle that had been parked in a nearby park for approximately one week. Probable Cause Affidavit, *State v. Machul*, No. 2018-CF-1265 (Fla. Cir. Ct. Apr. 23, 2018), docket no. 1. Upon locating the vehicle, Officer Lux noticed that it had a suspicious license and while

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

investigating the vehicle, Plaintiff, who was the vehicle's owner, approached Officer Lux and voluntarily provided him with a fictitious identification card purportedly issued by the Department of Travel in Washington, D.C.[2]  *Id*.  It appearing to Lux that the plate and identification were fictitious, forged, or counterfeit, Officer Lux arrested Plaintiff and had the vehicle towed by Matt's Towing and Recovery, Inc. ("Matt's Towing").  Doc. 1-1 at PageID 8.

On April 23, 2018, Plaintiff was charged with two felony offenses in the Florida state court: (1) possessing a counterfeit vehicle registration plate in violation of FLA. STAT. § 320.26(1)(a); and (2) possessing a fictitious identification card in violation of FLA. STAT. § 322.212(1)(a).  Citation, *State v. Machul*, No. 2018-CF-1265 (Fla. Cir. Ct. Apr. 23, 2018), docket no. 4.  Defendant Hillary Leigh Ellis was the state prosecuting attorney in the case and Defendant Amanda Davy, a public defender, represented Plaintiff in the criminal proceedings.  Doc. 1-1 at PageID 8.

On November 6, 2018, Plaintiff entered a plea of *nolo contendere* to the charge of possessing a counterfeit license plate and was sentenced by Florida Circuit Judge Brian Iten to, *inter alia*, 12 months probation.  Order of Probation, *State v. Machul*, No. 2018-CF-1265 (Fla. Cir. Ct. Nov. 15, 2018), docket no. 53.  The court's docket in that case reflects that no appeal was taken from the court's final judgment entry and that Plaintiff's probation was terminated on October 11, 2019.  *Id*.

Following his conviction, Plaintiff contends that on April 8, 2019, he allegedly entered into an agreement with the state of Florida and Matt's Towing, an agreement that "provided that the parties would settle any dispute arising out of the agreement by arbitration according to

---

[2] The United States Department of Travel "is not an agency or department of the United States government." *Matthews v. United States*, No. 3:16CV00148, 2016 WL 2624974, at *3 (S.D. Ohio May 9, 2016), *report and recommendation adopted*, No. 3:16-CV-148, 2016 WL 3002429 (S.D. Ohio May 23, 2016).

:tornillo:pierce el-bey., Arbitrator." Doc. 1-4 at PageID 57. Unremarkably, Plaintiff fails to attach any agreement that was actually signed by either Matt's Towing or the state of Florida.

What Plaintiff has subsequently presented to the Court, however, are three documents he apparently mailed to Matt's Towing in June 2018, July 2018 and March 2019, which -- from what the Court's can decipher of the incoherent nature of those documents -- purport to assert that Matt's Towing was liable to him in the amount of $500 per day for towing and holding his vehicle, and that the failure of Matt's Towing to respond to those documents amounted to an acquiesce by silence to submit the dispute to arbitration. Doc. 4-1 at PageID 112-15. The record before the Court does not contain similar documents purportedly sent to the state of Florida, although the undersigned suspects that similar mailings underlie Plaintiff's contention that Florida agreed to arbitrate his dispute.

On May 15, 2019, without any actual hearing, the alleged arbitrator issued an "arbitration award," which purports to be an arbitration decision consisting of 8 unintelligible pages. *See* doc. 2 at PageID 80-87. In that alleged arbitration decision, the arbitrator purports to not only void Plaintiff's criminal conviction and sentence in the aforementioned Florida criminal action, but also awards damages in Plaintiff's favor in the amount of $201,000 against Matt's Towing and over $135,000,000 ($135 million) against the state of Florida. Doc. 1-4 at PageID 58. The alleged arbitrator also concluded that, should Plaintiff need to seek to confirm the arbitration award in a court of competent jurisdiction, then the damage amounts owed to Plaintiff would increase twenty times. Doc. 2 at PageID 86. Without surprise, the alleged arbitrator cites no applicable law in support of his or her findings. Because Defendants did not pay him the amounts awarded by the arbitrator, Plaintiff now contends that Matt's Towing and the state of Florida owe him over $4 million and over $2.7 billion, respectively, pursuant to the alleged arbitration award. *Id*.

On February 28, 2020, Plaintiff filed this action against not only the state of Florida and Matt's Towing, but also Byrd, Lux, Schlabach, Davy, and Ellis – parties not named in Plaintiff's arbitration scheme. Doc. 1-1 at PageID 4. The undersigned, as required by law, liberally construed Plaintiff's *pro se* complaint to arguably assert civil rights claims under 42 U.S.C. § 1983. *See, e.g.*, doc. 2 at PageID 73 (requesting "to be made whole"). While noting numerous reasons why any claims for damages under § 1983 against the named Defendants would be frivolous, the undersigned found dismissal of the complaint appropriate under 28 U.S.C. § 1915(e) because personal jurisdiction over them is lacking and issued a Report and Recommendation in that regard.

On April 2, 2020, Plaintiff filed a motion for an extension of time to file objections to the undersigned's Report and Recommendation. Doc. 4. In that motion, Plaintiff states that he is not asserting civil rights claims in this case and instead, seeks one avenue of relief only: for the Court to confirm the aforementioned alleged arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. Doc. 4 at PageID 107. It appearing that the entirety of *pro se* Plaintiff's action is thus simply a request to confirm the alleged arbitration award, the undersigned **SUPPLEMENTS** the previously issued Report and Recommendation (doc. 3) as set forth herein and **GRANTS** Plaintiff's motion for an extension of time to file objections thereto (doc. 4). Plaintiff may file objections to the previously issued Report and Recommendation within the time period for filing objections to this Supplemental Report and Recommendation.

The undersigned, proceeding under 28 U.S.C. § 1915, now addresses Plaintiff's motion to confirm the alleged arbitration award and issues this Supplemental Report and Recommendation in that regard. Plaintiff seeks confirmation of the alleged arbitration award under 9 U.S.C. § 9, which states, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify

> the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.

There a number of issues with regard to Plaintiff's motion for confirmation. First, despite having subject matter jurisdiction over the underlying dispute, the Court nevertheless lacks subject matter jurisdiction under § 9 because, as required by its plain terms, Plaintiff does not evidence that any Defendant "signed an agreement to arbitrate and to be bound by judgment of the court after arbitration[.]" *United Food & Commercial Workers Local 951, AFL-CIO & CLC v. Mulder*, 31 F.3d 365, 371 (6th Cir. 1994); *see also Okla. City Assocs. v. Wal-Mart Stores, Inc.*, 923 F.2d 791, 793 (10th Cir. 1991) ("The unambiguous language of § 9 leads us to believe that it creates its own level of subject matter jurisdiction for confirmation under the FAA . . . [by conditioning] applicability of the FAA's summary confirmation process on whether 'the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration'"). Accordingly, Plaintiff's motion is subject to denial on this basis alone.

Even assuming, *arguendo*, that Defendants did agree to arbitrate a dispute with Plaintiff, and that they further agreed to have an arbitration award confirmed by a court, Plaintiff nevertheless fails to evidence that this Court would be the proper Court to so confirm the alleged arbitration award. *See* 9 U.S.C. § 9. The alleged arbitration award presented by Plaintiff appears to have issued from Greensboro, North Carolina (doc. 2 at PageID 87) and, thus, any confirmation of the alleged arbitration award would have to occur in the United States District Court for the Middle District of North Carolina unless, the parties "specified" this Court as the Court permitted

to confirm such award. 9 U.S.C. 9 ("If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made"); *see also* 28 U.S.C. § 113(b) ("Court for the Middle District [of North Carolina] shall be held at Durham, Greensboro, and Winston-Salem"). Absent any evidence that the parties agreed to arbitration, agreed to have an arbitration award confirmed, and further agreed to have such award confirmed by this Court, denial of Plaintiff's motion and dismissal of this action is warranted.

Based on all of the foregoing, the undersigned: (1) **SUPPLEMENTS** the previously issued Report and Recommendation (doc. 3); (2) **GRANTS** Plaintiff's motion for an extension of time to file objections to that Report and Recommendation (doc. 4); (3) **RECOMMENDS** that Plaintiff's motion to confirm the alleged arbitration award (doc. 1-4) be **DENIED**; and (4) again **RECOMMENDS** that his case be **TERMINATED** on the Court's docket.

Date:  April 8, 2020                                         s/ Michael J. Newman
                                                                           Michael J. Newman
                                                                           United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).